IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA  DIVISION

CHARLES E. CALHOUN, JR.,      :
        :
       Plaintiff,      :
VS.      :    Civil Action File No.
        :    **7:09-CV-77 (HL)**

LT. LARRY BIRD, and MARIA LAW,    :
        :
       Defendants.     :
_____

## RECOMMENDATION

Currently pending in this *pro se* prisoner  42 U.S.C. § 1983 action is defendants' motion for summary judgment (Doc. 15).  The undersigned notified plaintiff of the filing of the motion for summary judgment and of the possible consequences of failing to file a response thereto. (Doc. 16).  However, plaintiff has failed to file a response to the motion.

This is the third Complaint filed by this Plaintiff against persons employed at the Colquitt County Jail. (Calhoun v. Benton, 7:08-CV-146 (HL), which is still pending, and Calhoun v. Law and Steward, 7:08-CV-115 (HL), which has been dismissed.) The instant action appears to arise from an injury to the Plaintiff's hand which occurred in a fight with another inmate in October of 2008, and from complaints made by the Plaintiff regarding his kidneys beginning in February of 2009. Plaintiff complains of a lack of suitable medical treatment as a result of each incident.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Welch v. Celotex Corp*., 951 F.2d 1235 (11th Cir. 1992)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986).  However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).   Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

In his original and amended complaints, plaintiff states that while he was incarcerated at the Colquitt County Jail, he received inadequate medical care, amounting to a violation of his Eighth Amendment rights.  Defendants are a nurse employed at the jail responsible for providing medical care for the inmates there and a jailer at the jail.

2

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976).   However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations."   It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  *Helling v. McKinney* , 509 U.S. 25 (1993).

 Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference.  *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting  *Horn ex rel. Parks v. Madison Co. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994).   In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.   "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  *McElligott v. Foley*, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

A medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994) (quotation marks and citation omitted).    To demonstrate "significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the denial or delay in medical treatment that caused the harm rather than an underlying condition or injury.  *Hill*, 40 F.3d at 1186;  *Harris*,

3

21 F.3d at 393-94 (11th Cir.1994).   The medical care provided to an inmate must be reasonable. *Patterson v. Riddle*, 407 F. Supp. 1035 (E.D. Va. 1976). However, "it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." *Estelle*, 429 U.S. at 106. *See also Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991); *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D. Ga. 1980); *Hawley v. Evans*, 716 F. Supp. 601, 603 (N.D. Ga.1989).

The Eleventh Circuit has noted that, "where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Murphy v. Turpin*, 159 Fed. Appx. 945 at fn. 4, (11th Cir. 2005),  citing *Hamm*, 774 F.2d at 1575.  "Thus, where an inmate receives medical care, but desires a different mode of treatment, the care provided does not amount to deliberate indifference." *Id.*

In *Estelle v. Gamble*, *supra*, the Supreme Court cautioned, however, that not every allegation of inadequate medical treatment states a constitutional violation.  *Estelle* at 105.  Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Id.* at 106 (stating "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A Section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983).

"The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical

malpractice, and as such the proper forum is the state court." *Estelle, supra*, at 107.

The Plaintiff was an inmate at the Colquitt County Jail when he got into a fight with another inmate late on the night of October 4, 2008. The other inmate in the fight, Brae Staller, was taken to the hospital because of blood around his nose and mouth, and because his gums were cut and bleeding. Plaintiff has apparently filed this § 1983 action because he was not taken to the hospital at that time.  The very next morning, the Plaintiff was seen by nurse McKinney at the jail. Nurse McKinney cleaned and bandaged the Plaintiff's wound on October 5, 2008. (Affidavit of Law, ¶ 5.) Nurse Law then saw the Plaintiff the very next day, on Monday, October 6, 2008. Given the fact that Plaintiff was complaining of pain and bleeding, nurse Law sent him to a hospital emergency room on October 6, 2008 for examination and an X-ray. The X-ray indicated a contusion to Plaintiff's right hand. (Affidavit of Law, ¶ 5.)

As Plaintiff had struck another inmate who had Hepatitis C, the Plaintiff's blood was taken to make sure that he was not infected. He was not. Nevertheless, in an abundance of caution, the Plaintiff was later given immunizations against Hepatitis B. The Plaintiff never contracted either form of Hepatitis. (Affidavit of Law, ¶ 6.)

Despite the fact that the wound on Plaintiff's right hand was cleaned and bandaged each day by nurses at the jail, it became infected. As soon as the nursing staff became aware the Plaintiff's hand was infected, which was on October 12, 2008, an appointment was made for the Plaintiff with Dr. D. Q. Harris. Dr. Harris saw the Plaintiff on October 13, 2008, and admitted him to the Colquitt Regional Hospital so that the infection could be treated. The Plaintiff returned to the jail on October 17, 2008, where he once again received daily treatment for his wound, to include cleaning the wound and dressing it.  During this time, the Plaintiff was allowed to stay in the medical ward at the jail.

Once the Plaintiff's wound had completely healed, he was then returned to the general population. (Affidavit of Law, ¶¶ 7, 8.)

Beginning in February of 2009, the Plaintiff made complaints that he had pain in his kidneys and blood in his urine. As a result, Plaintiff was seen at the jail in February 2009 by the nursing staff and by Dr. Laguerre. In addition, the Plaintiff was seen by Dr. Thayer at the Colquitt Regional Medical Center, and a CAT scan was done of his kidneys. Neither the physical examinations nor the CAT scan revealed anything wrong with Plaintiff's kidneys. The CAT scan did reveal constipation, for which Dr. Thayer wrote prescriptions with which the Plaintiff was treated upon his return to the jail. (Affidavit of Law, ¶ 3.)

As Plaintiff continued to complain about pain in his kidneys, he was seen by one of the two visiting physicians at the jail on at least a monthly basis. In addition, urine samples were taken from the Plaintiff and sent to the local hospital in March of 2009 and again in June of 2009 for urinalysis. Again, there was no evidence that anything was wrong with Plaintiff's kidneys. (Affidavit of Law, ¶ 5.) Nurse Law took the extra step of obtaining Plaintiff's medical records from the correctional facility in Florida where Plaintiff had previously been incarcerated. Again, these Florida medical records revealed no problems with Plaintiff's kidneys. (Affidavit of Law, ¶ 6.)

Additionally, defendant Byrd asserts that he is not liable as he had no authority to make medical decisions regarding any inmates at the jail, that instead it is the medical staff who is responsible for medical treatment.  A supervisory official is not liable under § 1983 solely on the basis of *respondeat superior* or vicarious liability. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Instead, the plaintiff must allege that the named defendant(s) actually participated in the alleged constitutional violation, or exercised control or direction over the alleged violation. *Gilmere*

*v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985). There must be an affirmative link between the defendants' action and the alleged deprivation of a constitutional right. *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987)(concluding that a 42 U.S.C. § 1983 claim cannot be based upon vicarious liability).

Plaintiff has not responded to the properly supported motion for summary judgment. All he has made in his complaint are vague and conclusory allegations of inadequate medical care, which cannot overcome the evidence that has been submitted by defendants that they were not deliberately indifferent to his medical needs. Accordingly, defendants are entitled to summary judgment.

Defendants also assert that plaintiff failed to exhaust available administrative remedies prior to the filing of this lawsuit.

42 U.S.C.§ 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative  remedies as are available are exhausted.

Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).

During the time of Plaintiff's incarceration, the Colquitt County Jail had a three step grievance procedure. Inmates were to complete each step of the grievance procedure if they were not satisfied with its resolution. While the Plaintiff submitted a grievance regarding medical treatment for his kidney complaints on July 3, 2009, he never appealed from the response to that grievance. Thus, the Plaintiff did not exhaust the grievance procedure at the Colquitt County Jail as a result of the medical

treatment he received for his kidney complaints. (Affidavit of **LAW**, ¶¶ 8, 10.)  As to his hand, Plaintiff only completed the first two steps of the grievance procedure;  he submitted both an informal and an formal grievance, but he never submitted an appeal to the facility administrator. Thus, the Plaintiff did not exhaust the grievance procedure at the Colquitt County Jail in regard to the medical treatment he received as a result of his fight on October 4, 2008. (Affidavit of Law, ¶¶ 9, 10.)

The clear mandate of *Alexander v. Hawk* is that a  prisoner must exhaust the remedies available under an administrative remedy program before filing an action such as this.   Given these circumstances, the undersigned  believes that dismissal of these claims against defendants is mandated  for failure to exhaust administrative remedies.   The court must follow the dictates of circuit law.    This circuit, in interpreting the PLRA, has determined that exhaustion is now a pre-condition to suit, and the courts can no longer simply waive those requirements where it is determined the remedies are futile or inadequate.   *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998).

Therefore, it is the RECOMMENDATION of the undersigned that the motion for summary judgment filed on behalf of defendants be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS of receipt thereof.

**SO RECOMMENDED**, this 22nd  day of April, 2010.


                              **S/ G. MALLON FAIRCLOTH**
                              **UNITED STATES MAGISTRATE JUDGE**
                              _____